**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD LISTENBEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 03031 |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| CITY OF HARVEY, *et al*. | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Richard Listenbee alleges that a City of Harvey police officer, defendant Steven Kelley, attacked him without provocation and savagely beat him. He also asserts that after he received treatment at the hospital for his injuries, he was confined at the jail and denied access to his prescribed medication and all medical care for 30 hours, until he was transported to court and, ultimately, to the Cook County jail. In his Third Amended Complaint (Dkt. 96), Listenbee brings claims under 42 U.S.C. § 1983 for excessive force and deliberate indifference, in violation of the Fourth and Fourteenth Amendments, respectively. These claims are brought against individual officers as well as the City of Harvey, which, according to Listenbee, is liable because its *de facto* policies caused and failed to prevent his injuries. *See Monell v. Dep't of Social Servs*., 436 U.S. 658, 690 (1978). Listenbee also brings state-law claims of assault, battery, and intentional infliction of emotional distress against Officer Kelley and, under the theory of *respondeat superior*, the City of Harvey. The City now moves to dismiss the *Monell* claims and the allegation of liability via respondeat superior to the extent it applies to the constitutional claims. The motion is denied for the reasons set forth below.

1

**FACTS**

For purposes of this Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts alleged in the complaint and draws all possible inferences in favor of the plaintiff. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Therefore the Court recounts the following events as set forth in the complaint.

In the early evening on September 16, 2010, Listenbee went to the Harvey Police Department headquarters to speak to a detective, Derrick Muhammed, and was informed that Detective Muhammed was not there. Listenbee left a message for him and left the building to return to his car. On his way to the parking lot, he heard someone yelling; he turned to see Officer Steven Kelley approaching him, screaming and "yelling something that [Listenbee] did not understand." Listenbee began to ask Kelley "what was the problem," and, without warning, Kelley removed a metal baton from his belt and struck Listenbee across the head with it. Listenbee put up his hands to protect his head and face and backed away from Kelley, who "by then began striking [Listenbee] multiple times on his head and body with his metal baton." Listenbee felt a sharp pain in his left forearm, near his wrist. Now "fearing for his life," Listenbee "took off running" but ultimately surrendered by lying down on his stomach. By then, he was bleeding profusely from his head.

Kelley brought Listenbee to the booking area of the police station. Listenbee was then taken by ambulance to the emergency room of a local hospital. Listenbee received 21 staples in his head to stop the bleeding. An X-Ray revealed that his arm was severely broken, and it was placed into a splint and a sling. Kelley, who had accompanied Listenbee to the hospital, was present until his shift ended and he was relieved by an Officer Curtwood.

When the hospital discharged Listenbee, his discharge paperwork was given to Officer Curtwood. The discharge papers contained specific instructions for follow-up care and prescriptions for an antibiotic and a pain reliever. Officer Curtwood transported Listenbee back to the police station and gave the discharge papers to the on-duty booking officer. Listenbee was held in the jail at the police station for the next 30 hours without receiving his medication or any further medical attention.

During his 30-hour detention, Listenbee repeatedly complained to any police officer who came within hearing distance that he was in severe pain. He also informed officers (as yet unidentified) that he was in need of medication he had been prescribed at the emergency room. Listenbee's complaints were ignored. One officer told Listenbee that nothing could be done for him without the approval of a shift supervisor, who was not present at the station. Listenbee was in extreme and constant pain as a result of his broken arm and head injuries. However, when Listenbee was brought to the Cook County jail after his court appearance, the Harvey officers told him to lie to the intake personnel at the jail about his condition, lest the jail refuse to take him and he be returned to the Harvey jail. Listenbee complied, in the hope that he would be processed there and given medical care instead of being returned to the Harvey jail.

In addition to setting forth these allegations in his complaint, Listenbee asserts that these events occurred as result of what can be deemed official City of Harvey policies under the *Monell* doctrine. Listenbee alleges that the excessive force used by Officer Kelley can be attributed to the City's widespread practice, and *de facto* policy, of: (1) "failing to adequately train, supervise, and control its officers"; (2) "failing to adequately punish and discipline prior instances of similar misconduct, including excessive force, thereby leading Harvey police officers to believe their actions will not be scrutinized and . . . encourage[ing] future abuses"; (3)

3

and allowing "systemic deficiencies in its administrative investigations of use of force and citizen's complaints alleging improper use of force" such that officers "would feel comfortable that field misconduct, particularly use of excessive and unreasonable force, would not be discovered or would not result in any sanction." With respect to the denial of medical care, Listenbee alleges that the City routinely denied pretrial detainees access to proper or sufficient medication and medical treatment, and instituted practices that : (1) allowed police department staff "to not accurately document medication(s), treatments, and observations of the health status of its pretrial detainees"; (2) allowed staff "to ignore a physician's orders for prescribed medication and continuing medical treatment": (3) prevented staff from "adequately assessing, monitoring, observing, documenting, or providing or obtaining needed medical services," and (4) prevented "an adequate plan for emergency medical needs," "a system in place so that medical requests of detainees would be reviewed promptly," and "a system in place whereby a pretrial detainee's prescribed medication would be properly administered."

## DISCUSSION

The City of Harvey moves to dismiss the claims against it that allege *Monell* liability for excessive force and denial of medical care. "In a civil rights case alleging municipal liability, a federal court may not apply a heightened pleading standard more stringent than the usual Rule 8(a) pleading requirements." *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165 (1993)). At this point it is well settled that, in order to survive a motion to dismiss, a complaint must contain allegations that state a claim to relief that is plausible on its face. *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff

must set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*

A claim of liability pursuant to the *Monell* doctrine requires the plaintiff to plead facts allowing the inference that the plaintiff's injuries resulted from "official municipal policy," which can take three forms: "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). The plaintiff cannot simply hold a municipality vicariously liable for the actions of its employees. *Id.*

Here, the plaintiff alleges an official municipal policy in the form of widespread practices that amount to *de facto* policy. The Seventh Circuit has declined to adopt "any bright-line rules defining a 'widespread custom or practice.'" *See Thomas v. Cook County Sheriff's Dept*. 604 F.3d 293, 303 (7th Cir. 2010). To adequately claim that "there is a policy at issue rather than a random event," as required, the plaintiff might allege "an implicit policy or a gap in expressed policies," or "a series of violations." *Id.* (internal quotation marks and citations omitted). Although there is no clear consensus as to how frequently the misconduct must occur to support *Monell* liability, it must be more than one or even three instances. *Id.* (citing examples).

It is primarily this last point that drives the City's argument that Listenbee fails to state a claim for municipal liability. The City contends that Listenbee fails to plead any facts that support the conclusion that his injuries resulted from some widespread practice, and specifically that he "has not alleged any other instances similar to his, and has not cited any other cases which would support" the existence of some policy in the City of Harvey. As to the excessive force claim, the City argues that Listenbee's factual allegations relate only to the one-time conduct of Officer Kelley, and are therefore inadequate to render a *Monell* claim plausible.

Regarding the denial of medical care, the City argues that Listenbee simply pleads legal conclusions and does not support his assertion that the City "routinely denied" proper medical care to pretrial detainees. In response, Listenbee argues that he met his modest burden at the pleading stage and that the City is attempting to hold him to a heightened pleading standard. Although the Court agrees that Listenbee's *Monell*-specific allegations are general and conclusory,[1] the balance of his factual assertions about his experience are sufficient to nudge his *Monell* claims across the plausibility threshold.

   With respect to the excessive-force claim, although the Court does not credit those of Listenbee's allegations that amount to legal conclusions that his injuries resulted from an official policy, *see Iqbal*, 556 U.S. at 678, it finds that the complaint sufficiently alleges facts that make plausible an inference that this incident was not purely a "random event" but rather the product of the City's adoption of a *de facto* policy of tolerating the use of excessive force. Listenbee alleges that Harvey police officers do not receive adequate use-of-force training and that they operate in a culture where the use of force is not documented or investigated in a meaningful way, and further where the use of excessive force is not punished. It is settled that a failure to train can form the basis of *Monell* liability when it results from deliberate indifference to rights

---

[1] The Court does not endorse the practice of simply listing the elements of a *Monell* claim in conclusory fashion. *See McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011); *Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir. 1985) In addition to alleging a municipal policy, the plaintiff must allege "facts to suggest that the policies of which he complains *actually exist*." *Strauss,* 760 F.2d at 767 (emphasis added). Here, beyond his generic *Monell* allegations, the plaintiff pleads other facts which make it sufficiently plausible that this was not an isolated incident. It is not his bare allegations of an official policy that allow the claim to proceed.

of persons with whom the police come into contact.[2] *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see Thomas*, 604 F.3d at 303 ("[I]n situations where rules or regulations are required to remedy a potentially dangerous practice, the County's failure to make a policy is also actionable."). Here, Listenbee's factual allegations support the inference that the violence he experienced was not an isolated incident and could have resulted from a policy or practice of the police department. Listenbee alleges a brutal, unprovoked attack that began just outside the police headquarters, suggesting that Kelley made no attempt to avoid detection and had no expectation of negative reaction by superiors or other police officers. Likewise, the severity and readily observable placement of Listenbee's injuries—particularly the profuse bleeding from his head—permit an inference, at this stage, that Kelley had nothing to fear by severely injuring an individual who was not even an arrestee at the time of the attack.

There is more. Despite disclaiming any responsibility to provide evidence at the pleading stage, Listenbee attaches to his response brief a 2012 report from the Civil Rights Division of the Department of Justice, which investigated the use of force by Harvey police officers and made findings and recommendations to improve "serious deficiencies" that "create an unreasonable risk that constitutional violations will occur." *See* 1/18/2012 DOJ Letter, Dkt. # 106-2. This letter is properly considered in support of Listenbee's claims at the motion-to-dismiss stage. In opposing a Rule 12(b)(6) motion, a plaintiff may elaborate on his factual allegations, so long as the new elaborations are consistent with the pleadings, and may submit materials outside the pleadings to illustrate the facts he expects to be able to prove. *Geinosky v. Chicago*, 675 F.3d

---

[2] It is fairly obvious what discovery would be needed to uncover how, as of 2010, the City trained its police officers on the use of force and handled use-of-force incidents—contrary to the City's alarmist statement that Listenbee's allegations "cannot be reasonably investigated or defended in any fashion." Mem., Dkt. 102 at 4.

743, 746 n.1 (7th Cir. 2012) (citing numerous cases). Indeed, the Seventh Circuit has advised that, in the wake of *Twombly* and *Iqbal*, a plaintiff "who can provide such illustration may find it prudent to do so." *Id*. Here, the DOJ letter lends plausibility to Listenbee's allegations that his beating was not an isolated incident but the product of systemic shortcomings.[3]

The same is true for the denial of medical care claim, here governed by the Fourteenth Amendment's due process guarantee, rather than the Eighth Amendment, although the "deliberate indifference" standard applies either way.[4] *See King v. Kramer*, 680 F.3d 1013, 1017 (7th Cir. 2012). Listenbee contends that the detainees at the Harvey jail are "routinely" denied medical care. According to the complaint this routine practice is attributable to the absence of an appropriate system for accurately documenting and administering medical and medication needs, observing the health status of detainees, and promptly reviewing medical requests from detainees, among other shortcomings. *See Harris*, 489 U.S. at 390 ("[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."). The DOJ letter suggests that Harvey officers routinely fail to state whether arrestees "sustained any injuries or received medical care," which lends plausibility to Listenbee's

---

[3] In noting that the DOJ letter lends plausibility to the plaintiff's allegations, the Court makes no findings that information set forth in the report is accurate or admissible; those questions remain fully open as the case moves forward. Rather, the Court simply notes that the existence of this recent critical and independent review of the City's policies and procedures lends permissible support to the plaintiff's allegations at the pleading stage.

[4] Despite the parallel standard, as a pretrial detainee, Listenbee was entitled to "at least— and probably more" protection than a convicted criminal. *See Belbachir v. County of McHenry*, 726 F.3d 975, 979 (7th Cit. 2013) (quotation marks omitted).

allegations that Harvey lacks systems for appropriately acknowledging and documenting arrestee's injuries, let alone providing access to medical care for them. The DOJ letter also recommends that the Harvey police department make it a policy to have supervisors report to the scene of any arrest involving the use of force that caused serious injury, "to ensure that all injured are provided care." Again, this bolsters Listenbee's allegation that in 2010, the Harvey police did not have policies that ensured all injured arrestees were provided care.

Listenbee's deliberate indifference claim is also rendered plausible by the allegations regarding his own experience while locked up in the Harvey jail. For instance, he alleges that multiple police officers or staff saw his condition and failed to provide any help or relief. He alleges that he complained to anyone within hearing distance that he was in severe pain, and he was either ignored or told that nothing could be done for him. These allegations permit the inference that, rather than being an isolated incident, Listenbee's experience at the jail was the product of a policy of indifference to the health of detainees.

Finally, the City argues that it cannot be held liable on a *respondeat superior* theory for the constitutional claims, and that those claims must be dismissed against it to the extent plaintiff relies on that theory. The Court does not see in the complaint any attempt to assert *respondeat superior* liability for the constitutional claims; Count IV alleges that the City of Harvey is liable under *respondeat superior* for "all torts committed by its agent," Officer Kelley. The Complaint alleges assault, battery, and intentional infliction of emotional distress by Kelley, and it follows that those are the "torts" referred to in Count IV. Of course, the *Monell* doctrine precludes *respondeat superior* liability for municipalities for the constitutional violations of its employees, *see Monell*, 436 U.S. at 691, but the Court sees nothing in the complaint that runs afoul of that settled rule.

9

* * *

Because the complaint plausibly alleges that *de facto* policies of the City caused his injuries arising from the use of excessive force and subsequent denial of medical care, the City of Harvey's motion to dismiss the plaintiff's *Monell* claims is denied.

Date: October 9, 2013

_____
John J. Tharp, Jr.
United States District Judge